# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JLF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00621** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE STATE BOARD OF** | ) | |
| **EDUCATION, NASHVILLE** | ) | |
| **COLLEGIATE PREP, NOBLE** | ) | |
| **EDUCATION INITIATIVE, and** | ) | |
| **RETHINK FORWARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Before the court are (1) the Motion to Dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1), filed by defendant Tennessee State Board of Education ("the State Board") (Doc. No. 36); (2) the Motion for Judgment on the Pleadings, under Rule 12(c), filed by defendants Rethink Forward, Inc. d/b/a Nashville Collegiate Prep ("NCP") and Nobel Education Initiative ("NEI") (collectively, the "School Defendants") (Doc. No. 39);[1] and (3) the plaintiff's Motion for Judgment on the Pleadings (Doc. No. 46). For the reasons set forth herein, the defendants' motions will be granted, and the plaintiff's motion will be denied.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Dustin Faeder brings suit on behalf of his minor daughter, JLF. As a lawyer now admitted to practice in this court, he is also her attorney. This lawsuit was initially filed on August 10, 2021

---

[1] The plaintiff names Nashville Collegiate Prep and Rethink Forward as two separate defendants, but they appear to be different names for the same entity. NEI is NCP's "parent corporation." (Doc. No. 27, at 8.)

(Doc. No. 1), and the Amended Complaint was filed on August 24, 2021 (Doc. No. 27).[2]

The facts actually alleged in the Amended Complaint are simple. On August 10, 2021, at 8:00 a.m., JLF's parents accompanied her to her first day of kindergarten at NCP, a public charter school operated by Rethink Forward under the purview and regulations of the state of Tennessee. (Doc. No. 27, at 5.) While dropping JLF off at the school, her parents observed a display in the school's entryway that included a Tennessee state flag on a mobile flagpole and seven framed posters and postcards hung on the wall in a U-shaped pattern. (*Id.*; *see also* Doc. Nos. 27-1, 27-2.) The central poster states only "IN GOD *WE* TRUST." (Doc. No. 27-1.)[3] The other framed items include posters and postcards depicting artistic renderings of various Middle Tennessee-related governmental and cultural sites, including, among others, the General Jackson Showboat, the Tennessee State Capitol building, Cheekwood Botanical Gardens, the Parthenon, and Union Station. (Doc. No. 27-2.)

Federal law establishes that "'In God we trust' is the national motto." 36 U.S.C. § 302. Tennessee's "National Motto in the Classroom Act," *see* Tenn. Code Ann. § 49-6-2501, requires

---

[2] The original Complaint was filed *pro se* by both of JLF's parents, on JLF's behalf. The court notified the plaintiffs that a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney and that the lawsuit would be dismissed unless they submitted proof that they were attorneys licensed to practice in this court or retained counsel to represent their daughter. (*See* Doc. No. 12.) Thereafter, Dustin Faeder provided proof that he was an attorney licensed to practice in the state of Tennessee and was subsequently sworn in and admitted to practice before this court. JLF's mother filed a Notice of Withdrawal as Plaintiff (Doc. No. 2), and Dustin Faeder filed an Amended Complaint, attempting to realign the parties and clarify his claims on behalf of JLF. The court observes that the Amended Complaint is not remotely compliant with Rule 8, insofar as it does not contain a "short and plain" statement of the plaintiff's claim, Fed. R. Civ. P. 8(a)(2), and, instead, consists largely of legal argument. In addition, it is not compliant with Rule 10's requirement that a party "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The court, however, construes the pleading "as to do justice." Fed. R. Civ. P. 8(e).

[3] Rather than asterisks, the "WE" is actually flanked by stars, reminiscent of those on the Tennessee flag.

all Tennessee public schools to post "In God We Trust" in a "prominent location," as follows:

> (a) Beginning in the 2018-2019 school year, an LEA [local school agency, *see* Tenn. Code Ann. § 49-1-103(2)] shall require all schools within the LEA to display the national motto of the United States, "In God We Trust," in a prominent location in each school.
>
> (b) The display required in subsection (a) may take the form of, but is not limited to, a mounted plaque or student artwork.
>
> (c) For purposes of this section, "prominent location" means a school entry way, cafeteria, or common area where students are likely to see the national motto display.

Tenn. Code Ann. § 49-6-2502 (the "motto statute"). Tennessee law also requires children to attend school. Tenn. Code Ann. § 49-6-3007.

Faeder and his wife have chosen to raise their children in a non-religious manner. (Doc. No. 27, at 7.) JLF, through Faeder, brings suit under 42 U.S.C. § 1983, asserting (1) a "facial" challenge to the constitutionality of Tenn. Code Ann. § 49-6-2502 against the State Board under the Establishment Clause of the First Amendment and (2) an "as-applied" challenge to the NCP's compliance with the state law as violating the Establishment Clause. (*See* Doc. No. 27, at 5 ("JLF asserts that this statute, and its application, violate the Establishment Clause of the First Amendment of the United States Constitution . . . .").)

The Amended Complaint seeks a preliminary injunction that would prohibit the state of Tennessee from enforcing the statute and would order NCP to remove its display of the poster displaying the motto. (Doc. No. 27, at 18.) The Amended Complaint does not specifically request a permanent injunction. (*See id.*) However, the plaintiff subsequently filed a Withdrawal Notice of Request for As-Applied Preliminary Injunction ("Withdrawal Notice") as to the School Defendants "in response to NCP's recent addition of an educational plaque contextualizing NCP's 'IN GOD *WE* TRUST' poster." (Doc. No. 35, at 1.) The plaintiff clarifies that she "continues to proceed on the merits against all defendants," presumably meaning that she seeks a permanent

injunction as to all defendants, "and to request a preliminary injunction against the State of Tennessee . . . for the facial claim." (*Id.*)

The School Defendants filed an Answer to the Amended Complaint that, besides attempting to address the individual allegations in the plaintiff's sprawling and irregular pleading, provides additional information regarding, and photographs of, its attempts to "contextualize" the poster displaying the national motto, referenced in the plaintiff's Withdrawal Notice. (Doc. No. 34.)

The State Board, rather than answering, filed a Rule 12(b)(1) Motion to Dismiss, arguing that it is entitled to sovereign immunity under the Eleventh Amendment and, therefore, that the claim against it must be dismissed for lack of subject matter jurisdiction. (Doc. Nos. 36, 37.) The School Defendants, shortly thereafter, filed a Motion for Judgment on the Pleadings and supporting Memorandum. (Doc. Nos. 39, 40.) The plaintiff filed an omnibus Response to both motions (Doc. No. 45) and her own single-paragraph Motion for Judgment on the Pleadings, in which she states only that she "agrees" with the defendants that this matter should be decided on the pleadings, as the photos of the display speak for themselves, and this case presents only questions of law (Doc. No. 46). The School Defendants filed a Reply brief (Doc. No. 47), to which the plaintiff filed an unauthorized surreply (denominated as a "Reply" to the School Defendant's Reply) (Doc. No. 48). The defendants also filed Responses to the plaintiff's Motion for Judgment on the Pleadings, in which they simply adopt and incorporate by reference the arguments in support of their own motions. (Doc. Nos. 49, 50.) The State Board also objects to the plaintiff's motion as premature, because the pleadings have not actually closed with respect to the State Board. (Doc. No. 50, at 1–2.)

## II.    THE STATE BOARD'S MOTION

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert "lack of subject-matter jurisdiction" as a defense. A motion to dismiss under Rule 12(b)(1) is different from one under Rule 12(b)(6), in that it challenges the court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is on the *plaintiff* to prove that jurisdiction exists. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017), *abrogated on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167–68 (2019); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

A defendant may make either a facial or factual challenge to subject matter jurisdiction. *Wayside Church*, 847 F.3d at 816. "A facial attack on the subject-matter jurisdiction . . . questions merely the sufficiency of the pleading" and, like a motion under Rule 12(b)(6), requires the court to take all factual allegations in the pleading as true. *Id.* at 816–17 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising a factual controversy that may require the district court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* at 817 (quoting *Gentek*, 491 F.3d at 330). "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction . . . the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject matter jurisdiction exists." *Adkisson v. Jacobs Engineering Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). A question of sovereign immunity is generally a factual attack. *Mynatt v. United States*, No. 3:20-CV-00151, 2021 WL 3883952, at *2 (M.D. Tenn. Aug. 31, 2021) (Campbell, J.) (citing *Hatcher v. United States*, 855 F. Supp. 2d 728, 731 (E.D. Tenn. Mar. 31, 2012); *Banks v. United States*, No. 1:08CV849, 2009 WL 805143 at *4 (N.D. Ohio Mar. 27, 2009) ("The sovereign immunity

question under Rule 12(b)(1) is not whether the complaint adequately sets forth a substantive claim . . . but whether the Court has jurisdiction to hear the causes of action the claim asserts.").

### B. Discussion

The plaintiff asserts a claim under § 1983 against the State Board, alleging that it violated her rights under the First and Fourteenth Amendments. She also alleges that federal question jurisdiction exists. Courts, however, have interpreted the Eleventh Amendment as according sovereign immunity to states and protecting states—as well as state officials sued in their official capacity for money damages—from suit in federal court. *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). Notably, sovereign immunity also applies to state agencies or departments, such as the Tennessee State Board of Education. *See id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

Although on its face the Eleventh Amendment prohibits only suits brought against a state by citizens of another state, the Supreme Court has consistently interpreted the Amendment as extending the states' immunity to suits by citizens against their own states. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). There are three exceptions to sovereign immunity: "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler*, 865 F.3d at 410 (citing *Puckett v. Lexington-Fayette Urb. Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016)).

In this case, the Eleventh Amendment bars the plaintiff's § 1983 claims against the State Board. The Board is a state agency "responsible for promulgating and adopting rules and regulations pertaining to education." *Bethel Univ. v. Tenn. State Bd. of Educ.*, No. M2017-01428-COA-R3-CV, 2018 WL 3860750, at *1 (Tenn. Ct. App. Aug. 14, 2018). And the plaintiff has not established that any of the exceptions to immunity applies. First, the state of Tennessee has not

consented to suit. *See Berndt v. State*, 796 F.2d 879, 881 (6th Cir. 1986) ("[S]ection 20-13-102(a) of the Tennessee Code, which expressly prohibits any suits in state court against the state or where state treasury funds are potentially involved, also extends impliedly to suits brought in federal court."). Second, while Eleventh Amendment immunity may be abrogated by statute, Congress has not done so for claims under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citations omitted)).

This action also does not implicate *Ex Parte Young*. "The exception set forth in *Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler*, 865 F.3d at 412; *see also Price v. Medicaid Dir.*, 838 F.3d 739, 746–47 (6th Cir. 2016) ("[A] federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law."). In this case, however, the plaintiff has not brought suit against any state official in an official capacity and affirmatively disclaims any suggestion that she be required do so. Rather, she brings suit against the State Board, a state agency, which places her outside the *Ex Parte Young* framework.

In short, the Tennessee State Board of Education is immune from suit in this court. Eleventh Amendment immunity is jurisdictional in nature. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("The sovereign immunity guaranteed by [the Eleventh] Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the

State waives its immunity or Congress abrogates that sovereign immunity."). Accordingly, the Tennessee State Board of Education's motion to dismiss for lack of subject matter jurisdiction will be granted.

## III.   THE STATE DEFENDANTS' MOTION

### A.   Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard that applies to such a motion is the same as for Rule 12(b)(6) motions. *JPMorgan Chase Bank, N.A. v. Winglet*, 510 F.3d 577, 581 (6th Cir. 2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citation omitted). A motion for judgment on the pleadings will not be granted when material facts are disputed, but Rule 12(c) can be used to resolve purely legal questions on the pleadings. *Cf. id.* at 583 (analyzing contract provisions on review of a Rule 12(c) motion because the "proper interpretation of a contract is a question of law").

### B.   Discussion

The plaintiff claims that the motto statute, as applied by the School Defendants, violates her rights as protected by the First Amendment to the United States Constitution. The claim is brought under 42 U.S.C. § 1983, a statutory mechanism through which a private citizen may obtain monetary, declaratory, or injunctive relief for the violation of his civil rights by a "person [acting] under color of any statute, ordinance, regulation, custom, or usage of any State." The School Defendants do not dispute that, as operators of a charter school authorized by the state of Tennessee, they are "persons" that may be liable under § 1983. They nonetheless argue first that, because they were merely complying with state law and because state law rather than a school

policy is the "moving force behind the alleged constitutional violation," they cannot be liable under § 1983. (Doc. No. 40, at 4 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005); *Smith v. South Dakota*, No. CIV. 11-4001-KES, 2012 WL 1038629 (D.S.D. Mar. 27, 2012)).)

This argument is without merit. On its face, § 1983 creates a cause of action against any person who, "under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983. The School Defendants are such persons, and they are alleged to have acted under color of law in implementing (and in their choice of how to implement) an allegedly unconstitutional statute. Insofar as the School Defendants are attempting to argue that the plaintiff lacks standing to sue them, the Sixth Circuit has made it clear that a plaintiff seeking relief under § 1983 has standing to sue the officials charged with "implementing the consequences of others' actions." *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018). The plaintiff had other choices of whom to sue, but that does not make the decision to sue the School Defendants incorrect.

The School Defendants next argue that the recent additions they have made to the display of the national motto renders moot the plaintiff's claims.[4] This argument, too, is without merit. Generally, the "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Enlil. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000). And a case will

---

[4] The School Defendants represent—and the plaintiff apparently concedes (*see* Doc. No. 45, at 5)—that, after the filing of the Amended Complaint, the School Defendants modified the display by adding a plaque below the poster of the national motto. As shown in photographs attached as exhibits to the School Defendants' motion, the plaque states: "Congress and President Dwight Eisenhower established 'In God We Trust' as the national motto of the United States in 1956. In 2018, the Tennessee General Assembly passed TCA § 49-6-25-02 which requires all public schools to post the national motto in a prominent location." (*See* Doc. Nos. 34-2, 34-3, 34-4.)

generally not be dismissed where a plaintiff's claim has been mooted by a defendant's voluntary cessation of allegedly improper behavior. *Id.* at 189. As the plaintiff points out, there is nothing to prevent the School Defendants from changing their display. Moreover, the defendants' motion is one under 12(c), which requires the court to accept as true the allegations in the complaint.[5] The court, therefore, considers the facts as alleged by the plaintiff to be true and will take into consideration the display of the national motto as alleged by the plaintiff and shown in the photographs attached to the Amended Complaint, rather than the photographs submitted with the School Defendants' motion.

Having dispensed with these arguments, the court proceeds to a consideration of the merits of the plaintiff's claim. The plaintiff's claim against the School Defendants is that the motto statute, facially and as applied by the School Defendants, violates the Establishment Clause. The Establishment Clause of the First Amendment states: "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause prohibits the enactment of a law or official policy that "establishes a religion or religious faith, or tends to do so." *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984).

Including Tennessee, at least fifteen states have enacted statutes either requiring or permitting the posting of the national motto in public schools.[6] The court is unaware of any

---

[5] Mootness is generally a jurisdictional question, which may be decided as a factual matter on a motion to dismiss. The School Defendants' motion is brought under Rule 12(c), not Rule 12(b)(1), and they have not presented any declarations or other evidence in support of their mootness claim. The court finds, as a jurisdictional matter based solely on the pleadings, that the plaintiff's claims are not moot.

[6] Several states have enacted laws almost identical to Tennessee's. *See* Ky. Rev. Stat. Ann. § 158.195(1) (which went into effect 2019-2020 school year); La. Stat. Ann. § 17:262(2) (same); S.D. Codified Laws § 13-24-23 (same). Several states require that the national motto be posted but only if voluntarily contributed funds are available to fund the signage. *See, e.g.*, Ark. Code Ann. § 1-4-133; Ga. Code Ann. § 50-3-4.1; N.C. Gen. Stat. Ann. § 115C-47(29c); Tex. Educ. Code Ann. § 1.004. And many states permit, but do not require, the posting of the national motto in the context

successful challenges to any of these statutes as violating the Establishment Clause and, indeed, has located only one unsuccessful challenge. In *Myers v. Loudoun County School Board*, the parent of two school children brought suit against a county school board and superintendent, challenging his children's school's compliance with Virginia state statutes requiring the daily recitation of the pledge of allegiance and the posting of the national motto in public school buildings. 251 F. Supp. 2d 1262, 1275 (E.D. Va. 2003), *aff'd sub nom. Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395 (4th Cir. 2005) (addressing only the validity of the pledge of allegiance statute). There, the plaintiff "admitted that he did not challenge the facial validity of the motto statute" and instead claimed that "the School's compliance with the motto statute violates the First Amendment because the School posts the national motto using a God and Country religious design supplied by a conservative religious group." *Id.* at 1273 (internal citation to the record and quotation marks omitted). The plaintiff asked for an injunction ordering the school to "[r]eplace the national motto poster installed in each school with a religiously neutral design that does not use the flag in the design and clearly identifies that the words 'In God We Trust' is the national motto and not a declarative religious statement." *Id.* The district court rejected the claim, stating:

> [T]he posters at issue are secular and not religious. Indeed, aside from the inclusion of the word "God" as a portion of the national motto, the posters are wholly devoid of any religious reference or symbolism. Furthermore, the national motto's reference to God does not make the statement religious as opposed to secular. . . .
>
> Likewise, the fact that the poster was designed by a religious group does not make the poster religious in nature. Indeed, absent any allegation that the poster contains any objectively religious theme, the court may not infer that because the designers may have been religiously motivated, that the design itself is religiously themed. Therefore, the Court concludes that the School's application of the motto statute, in particular the use of the posters supplied by an allegedly religiously motivated

---

of other historical and cultural displays. *See, e.g.*, Ariz. Rev. Stat. Ann. § 15-717(1); Ala. Code § 1-2B-30(1); Fla. Stat. Ann. § 1003.44; Ind. Code Ann. § 20-30-3-5; N.D. Cent. Code Ann. § 15.1-06-17.2; N.H. Rev. Stat. Ann. § 189:17-b; S.C. Code Ann. § 10-1-168.

group, does not offend the Establishment Clause of the First Amendment.

*Id.* at 1274–75 (citing *Aronow v. United States*, 432 F.2d 242, 243 (9th Cir. 1970) ("It is quite obvious that the national motto and the slogan on coinage and currency 'In God We Trust' has nothing whatsoever to do with the establishment of religion."); *Gaylor v. United States*, 74 F.3d 214, 216 (10th Cir. 1996) ("The motto symbolizes the historic role of religion in our society, formalizes our medium of exchange, fosters patriotism, and expresses confidence in the future." (internal citations omitted)); *Cty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 602–03 (1989) ("Our previous opinions have considered in dicta the motto and the pledge, characterizing them as consistent with the proposition that government may not communicate an endorsement of religious belief."); *Peck v. Upshur County Bd. of Educ.*, 155 F.3d 274, 281 (4th Cir. 1998) (religiously neutral policy is not unconstitutionally poisoned by motives of those operating under the policy)).

Indeed, although the question of its being posted in schools has not otherwise been considered, the Supreme Court and courts of appeal have consistently held that displaying the national motto on the nation's currency and coins and elsewhere does not violate the Establishment Clause. In *Newdow v. Lefevre*, 598 F.3d 638 (9th Cir. 2010), for instance, the Ninth Circuit reaffirmed its 1970 holding in *Aronow v. United States* that the national motto used on currency did not violate the First Amendment's Establishment Clause, reasoning:

> It is quite obvious that the national motto and the slogan on coinage and currency "In God We Trust" has nothing whatsoever to do with the establishment of religion. Its use is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise. . . .

> It is not easy to discern any religious significance attendant the payment of a bill with coin or currency on which has been imprinted "In God We Trust" or the study of a government publication or document bearing that slogan. . . . While "ceremonial" and "patriotic" may not be particularly apt words to describe the category of the national motto, it is excluded from First Amendment significance because the motto has no theological or ritualistic impact. As stated by the

Congressional report, it has "spiritual and psychological value" and "inspirational
quality."

*Newdow*, 598 F.3d at 644 (quoting *Aronow*, 432 F.2d at 243–44). The court observed that its "sister

circuits are in accord with *Aronow*. Indeed, every circuit to address the question has held the

national motto does not violate the Establishment Clause." *Id.* at 644 n.11 (citing *Lambeth v. Bd.*

*of Comm'rs*, 407 F.3d 266, 270–73 (4th Cir.), *cert. denied*, 546 U.S. 1015 (2005); *Gaylor v. United*

*States*, 74 F.3d 214, 217–18 (10th Cir.), *cert. denied*, 517 U.S. 1211 (1996); *O'Hair v. Murray*,

588 F.2d 1144, 1144 (5th Cir.), *cert. denied*, 442 U.S. 930 (1979)).

In *Newdow*, the court also rejected the plaintiff's contention that the Supreme Court's

decisions had changed the legal landscape since the issuance of *Aronow* such that the court should

revisit its prior holding. The Ninth Circuit disagreed, observing that, "[t]o the contrary, and

consistent with *Aronow*, the Supreme Court has noted in dicta [that] the national motto does not

violate the Establishment Clause." *Id.* at 645 (citing *Cty. of Allegheny*, 492 U.S. at 602–03 (noting

that the motto is "consistent with the proposition that government may not communicate an

endorsement of religious belief"); *Lynch v. Donnelly*, 465 U.S. 668, 676 (1984) (describing the

"statutorily prescribed national motto 'In God We Trust'" as a constitutional "reference to our

religious heritage")).

The Sixth Circuit does not appear to have specifically addressed the constitutionality of the

national motto, but it has considered whether Ohio's adoption of the state motto, "With God, All

Things Are Possible," *per se* violated the Establishment Clause. *Am. Civil Liberties Union v.*

*Capitol Square Review & Advisory Bd.*, 243 F.3d 289 (6th Cir. 2001) (en banc). The court

concluded that it did not, noting along the way that the national motto is a "symbol of common

identity." *Id.* at 307.[7] In considering the challenge before it, the Sixth Circuit expressly adopted a narrow view of the Establishment Clause, explaining:

> Whatever else may have been understood to be prohibited with the adoption of the First Amendment's Establishment Clause, it is clear that the principal thrust of the prohibition was to prevent any establishment by the national government of an official religion, including an established church such as that which existed in England at the time the American colonies won their independence from the Crown.

*Id.* at 293. And, following a lengthy summary of "historical evidence concerning the original understanding" of the Establishment Clause, the court concluded that,

> [g]iven th[at] history . . . , it seems reasonably clear to us that in the age of Washington, Jefferson and Madison, as in the age of Lincoln, the statute in which Ohio established its current motto would not have been deemed violative of the United States Constitution as a law respecting an establishment of religion. . . .

> The motto involves no coercion. It does not purport to compel belief or acquiescence. It does not command participation in any form of religious exercise. It does not assert a preference for one religious denomination or sect over others, and it does not involve the state in the governance of any church. It imposes no tax or other impost for the support of any church or group of churches. Neither does it impose any religious test as a qualification for holding political office, voting in elections, teaching at a university, or exercising any other right or privilege. And, as far as we can see, its adoption by the General Assembly does not represent a step calculated to lead to any of these prohibited ends.

> The motto is merely a broadly worded expression of a religious/philosophical sentiment that happens to be widely shared by the citizens of Ohio. As such, we believe, the motto fits comfortably within this country's long and deeply entrenched tradition of civic piety, or "ceremonial deism" . . . .

*Id.* at 299–300.

> Finally, with reference to the national motto, the court observed:

> The national government itself adopted just such a motto in the [statute] now codified as 36 U.S.C. § 302: "'In God we trust' is the national motto." No fewer

_____

[7] Even more recently, in yet another challenge to the display of the national motto on United States currency, the Sixth Circuit, citing most of the cases already cited herein, reaffirmed that "these cases confirm that the statutes requiring [the motto's] inscription on the currency are not devoid of secular meaning" and "therefore are not facially discriminatory under the Free Exercise Clause" of the First Amendment. *New Doe Child #1 v. Congress of United States*, 891 F.3d 578, 592 (6th Cir. 2018).

than three of our sister circuits have upheld the constitutionality of the national
motto against challenges based on the Establishment Clause. The Supreme Court
has never questioned the proposition that the national motto can survive scrutiny
under the Establishment Clause, and we should be utterly amazed if the Court were
to question the motto's constitutionality now. The national motto happens to be
inscribed directly above and behind the Speaker's Chair in the United States House
of Representatives Chamber, and the idea of any federal court having the temerity
to order the inscription stricken from the nation's Capitol strikes us as ludicrous.

*Id.* at 301 (citing *Aronow*, 432 F.2d 242 (9th Cir.); *O'Hair*, 588 F.2d 1144 (5th Cir.); *Gaylor*, 74
F.3d 214 (10th Cir.)) (footnotes omitted).

The plaintiff's argument here is that the School Defendants' display of the national motto
fails the "*Lemon* Test's Endorsement Prong," even if considered within the context of the complete
display in which it is situated. (Doc. No. 45, at 5 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).)
The plaintiff's argument, essentially, is that the display in a *school* setting changes the analysis
and that the School Defendants' particular method of display—including the stars on either side
of the "we" in the motto, the use of all capital letters, and the size of the font in relation to the
explanatory plaque—renders the display unconstitutional under an "as applied" analysis.

In *Lemon*, the Supreme Court held that two state statutes providing for aid to, or for the
benefit of, nonpublic parochial schools were unconstitutional because they involved excessive
entanglement between the government and religion. In reaching that conclusion, the Court
enunciated what has come to be known as the *Lemon* test. Under this test, to be valid under the
First Amendment's Establishment Clause, a challenged state statute "must have a secular
legislative purpose; second, its principal or primary effect must be one that neither advances nor
inhibits religion; finally, the statute must not foster an excessive government entanglement with
religion." *Lemon*, 403 U.S. at 612–13 (internal citations and quotation marks omitted). While the
Court has, on the one hand, held that a statute that "violates any of these three principles . . . must
be struck down under the Establishment Clause," *Stone v. Graham*, 449 U.S. 39, 40–41 (1980), it

has also held that *Lemon* does not apply to all Establishment Clause challenges and that its factors "serve as 'no more than helpful signposts,'" *Van Orden v. Perry*, 545 U.S. 677 (2005) (quoting *Hunt v. McNair*, 413 U.S. 734, 74 (1973)).

The court finds, first, in light of the substantial body of law referenced above repeatedly concluding in a variety of contexts that the national motto has a secular purpose and that its display does not violate the Establishment Clause, that the *Lemon* test is of limited utility in this context. The court also notes that none of the cases on which the plaintiff relies is remotely on point or relevant to the case before this court, primarily because they involve completely unrelated factual scenarios.[8] Based on well established law concerning the inherently secular nature of the national motto, the court finds that the state statute requiring the display of the national motto in public schools is not facially unconstitutional. The fact that the display is in a public school does not require enhanced scrutiny. As with Ohio's state motto and the posting of the national motto in the United States House of Representatives Chamber, the posting of the national motto in schools "involves no coercion," "does not purport to compel belief or acquiescence," "does not command participation in any form of religious exercise," "does not assert a preference for one religious denomination or sect over others, and it does not involve the state in the governance of any

_____

[8] Other cases the plaintiff cites and relies on, aside from *Lemon*, include *Stone v. Graham*, 449 U.S. 39 (1980), which involved a challenge to a state statute that required the posting of the Ten Commandments on the walls of each public school classroom in the state, and *McCreary County v. American Civil Liberties Union of Kentucky*, 545 U.S. 844, 844 (2005), which involved two Kentucky counties' practice of posting copies of the Ten Commandments at their courthouses. *See also Smith v Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580 (6th Cir. 2015) (applying the *Lemon* test to a contract between a school board and a self-proclaimed "religious institution" but finding that the contract at issue did not violate the Establishment Clause). Other cases the plaintiff relies on have been overruled or abrogated. *See, e.g.*, *Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573 (1989) (finding unconstitutional a county's prominent display of a crèche depicting the Christian Nativity scene at the county courthouse), *abrogated by Town of Greece v. Galloway*, 572 U.S. 565 (2014) (holding that the prayer opening town board meetings did not have to be nonsectarian to comply with the Establishment Clause).

church." *Capitol Square Review & Advisory Bd.*, 243 F.3d at 299. The plaintiff's argument that the statute is *per se* unconstitutional is without merit.

The plaintiff's "as-applied" challenge fares no better. The plaintiff objects to the School Defendants' decision to include stars in the design of the poster, the size of the font, and the capitalization of the text. However, the stars clearly have patriotic rather than religious overtones, and the poster does not contain any overtly or covertly religious reference or symbolism. As set forth above, the national motto's reference to God does not make the statement religious as opposed to secular. The entire display in which the poster of the national motto is situated itself contains no religious symbolism or references and, as such, reflects no intention on the part of the School Defendants to establish or promote a religion. Even without consideration of the new plaque explaining why the national motto is posted, the display as originally viewed by the plaintiff does not have the effect of promoting a particular religion; it is not coercive; and it does not involve any excessive entanglement of a government institution and religion. The display adopted by the School Defendants to comply with state law requiring the posting of the national motto, as viewed by the plaintiff on her first day of school, does not violate the Establishment Clause.[9]

## IV. CONCLUSION

For the reasons set forth herein, the State Board's Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. 36) will be granted; the School Defendants' Rule 12(c) Motion for Judgment on the Pleadings (Doc. No. 39) will be granted; and the plaintiff's Motion for Judgment on the Pleadings (Doc. No. 46) will be denied. The State Board's request that it be granted "a time

---

[9] This is not to say that it is impossible to envision contexts in which the posting of the national motto might give rise to a valid as-applied Establishment Clause challenge, but most of these scenarios would necessarily involve the display of additional religious-themed images and text that, in and of themselves, would likely present an Establishment Clause problem.

within which the State of Tennessee, through the Attorney General's Office, [may] be permitted to move for intervention to defend the constitutionality of the state statute" (Doc. No. 36, at 1) will be denied as moot.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge